[Tagged]



**ORDERED in the Southern District of Florida on July 3, 2012.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:                                                    Case No. 09-15556-EPK

KANE & KANE, A PARTNERSHIP,                               Chapter 7

        Debtor.
_____/

MICHAEL R. BAKST
as Trustee in Bankruptcy for
KANE & KANE, A PARTNERSHIP,

        Plaintiff,
v.                                                        Adv. Proc. No. 10-01022-EPK

UNITED STATES OF AMERICA,

        Defendant.
_____/

### ORDER DISMISSING INVERVENORS CHARLES J. KANE
### AND HARLEY N. KANE FROM ADVERSARY PROCEEDING

THIS MATTER came before the Court for hearing on June 14, 2012 upon the Court's

*Order to Show Cause Why Intervenors Charles J. Kane and Harley N. Kane Should Not Be*

*Dismissed from this Adversary Proceeding and Setting Hearing Thereon* [ECF No. 281] (the "Order to Show Cause").

This adversary proceeding is brought by Michael R. Bakst as chapter 7 trustee (the "Plaintiff") for Kane & Kane, a Partnership (the "Debtor") against the United States of America (the "Defendant") to recover funds transferred by the Debtor to the Defendant in payment of taxes owing by Charles J. Kane ("Charles Kane") and Harley N. Kane ("Harley Kane" and, with Charles Kane, the "Kanes").  The Court previously allowed the Kanes, former general partners of the Debtor, to intervene in this adversary proceeding on the ground that the Kanes argued the funds transferred to the Defendant were their property rather than property of the Debtor. In another adversary proceeding in which the Kanes were defendants, the Court recently determined that the funds in question were in fact property of the Debtor and not property of the Kanes individually, thus negating the sole reason for the Court's prior order allowing the Kanes to intervene in this action.  The Kanes oppose their dismissal from this case on the ground that, in spite of the Court's ruling in that other adversary proceeding, they allege the right to intervene here.  The Defendant opposes dismissal of the Kanes from this adversary proceeding arguing that the Kanes are indispensable parties.  The Plaintiff supports dismissal of the Kanes from this action arguing that they are neither indispensable parties nor entitled to intervene.

The Court considered the *Response of Intervenors, Charles J. Kane and Harley N. Kane, to May 16, 2012 Order to Show Cause* [ECF 294] (the "Kane Response"), the *Government's Response to Order to Show Cause Why Intervenors Should Not Be Dismissed from This Adversary Proceeding* [ECF No. 293] (the "Defendant's Response"), the arguments advanced by the Kanes, the Defendant and the Plaintiff at the June 14, 2012 hearing, and is otherwise fully advised in the premises.  For the reasons stated below, the Court dismisses the Kanes as intervenors from the above-captioned adversary proceeding.

2

## I.    BACKGROUND

Due to the tangled nature of this matter, which involves several long-running and inter-related cases, a bit of history is warranted.

The Debtor was a law firm formed as a Florida general partnership.  The Kanes, both members of the Florida Bar, were the only partners in the Debtor.

In 2004, Stewart Tilghman Fox & Bianchi, P.A., William C. Hearon, P.A., and Todd S. Stewart, P.A. ("Stewart *et al.*") filed suit against the Debtor and the Kanes in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "State Court").  On April 24, 2008, the State Court entered its Final Judgment in favor of Stewart *et al.* and against the Debtor, Charles Kane and Harley Kane, jointly and severally, in the amount of $2,000,000.00 plus pre and post-judgment interest (the "Stewart Debt").

On November 17, 2008, the Debtor, Charles Kane and Harley Kane each filed with this Court voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*  The Court subsequently dismissed these three chapter 11 cases effective on March 30, 2009 after the Court found that they had been filed in bad faith.

On March 30, 2009, the Debtor initiated the above-captioned main case by filing a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code.  Also on March 30, 2009, Charles Kane and Harley Kane each filed voluntary chapter 7 petitions.

On July 31, 2009, Stewart *et al.* filed adversary complaints against the Kanes (the "Stewart Adversary Proceedings").  Stewart *et al.* sought: (a) to deny the Kanes their discharge pursuant to 11 U.S.C. §§ 727(a)(2), (5), and (7); and (b) a determination that the Stewart Debt was excepted from each Kane's discharge pursuant to 11 U.S.C. §§ 523(a)(4) and (6).  The Stewart Adversary Proceedings were consolidated for trial. [ECF No.17, Case No. 09-01838-EPK; ECF No. 16, Case No. 09-01839-EPK].

On January 7, 2010, the Plaintiff initiated the above-captioned adversary proceeding by filing his *Complaint to Avoid and to Recover Fraudulent Transfers and for Other Relief* [ECF No. 1] (the "Complaint").  The Plaintiff alleges that the Debtor made the following transfers (the "Transfers") to the Defendant: (a) $310,000.00 on April 14, 2008 in payment for Charles Kane's personal federal income tax liability; (b) $290,000.00 on April 14, 2008 in payment for Harley Kane's personal federal income tax liability; (c) $7,706.00 on August 28, 2009 in payment for Charles Kane's personal federal income tax liability; (d) $60,000.00 on September 15, 2008 in payment for Charles Kane's personal federal income tax liability; (e) $60,000.00 on September 15, 2008 in payment for Harley Kane's personal federal income tax liability; and (f) $165.90 on October 7, 2008 in payment for Charles Kane's personal federal income tax liability.

The Plaintiff seeks to avoid the Transfers pursuant to several statutes and to recover from the Defendant the money transferred pursuant to 11 U.S.C. § 550.  In Count I of the Complaint, the Plaintiff seeks to avoid the Transfers pursuant to 11 U.S.C. § 548(a)(1)(A), 11 U.S.C. § 544(b)(1), Fla. Stat. § 726.108(1)(a), and Fla. Stat. § 726.105(1)(a), alleging that the Debtor made the Transfers with the actual intent to hinder, delay or defraud its present or future creditors.  In Count II of the Complaint, the Plaintiff seeks to avoid the Transfers pursuant to 11 U.S.C. § 548(a)(1)(B), alleging that the transfers were constructively fraudulent because the Debtor did not receive reasonably equivalent value for the Transfers and the Debtor: (a) was insolvent on the dates of the Transfers or became insolvent as a result thereof; (b) was unreasonably under-capitalized; (c) intended to incur or believed it would incur debts beyond its ability to pay as such debts matured; and (d) made the Transfers outside of the Debtor's ordinary course of business for the benefit of insiders, i.e., the Kanes.  In Count III of the Complaint, the Plaintiff seeks to avoid the Transfers pursuant to 11 U.S.C. § 544(b)(1), Fla. Stat. 726.108(1)(a), Fla. Stat. § 726.106(1), and Fla. Stat. 726.105(1)(b), alleging that the transfers were constructively fraudulent because the Debtor did not receive reasonably

equivalent value for the Transfers and the Debtor: (a) was insolvent on the dates of the Transfers or became insolvent as a result thereof; (b) was unreasonably under-capitalized; and (c) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as such debts matured.

On January 25, 2010, the Kanes filed their *Motion to Intervene by Charles J. Kane and Harley N. Kane* [ECF No. 6] (the "Motion to Intervene").  The Kanes sought to intervene in the above-captioned adversary proceeding pursuant to Fed. R. Bankr. P. 2018(a), along with Fed. R. Civ. P. 24(a)(2)[1] and (b)(1)(B)[2], asserting that the transferred funds were actually the property of the Kanes prior to the Transfers because such funds were reflected in the Kanes' capital and drawing accounts maintained by the Debtor.

On February 19, 2010, the Defendant filed the *United States of America's Motion to Dismiss Complaint with Incorporated Memorandum of Law* [ECF No. 14] (the "Motion to Dismiss").  The Defendant argued, among other things, that the Kanes were required parties under Fed. R. Civ. P. 19(a)(1)(B)[3] and that the Complaint should be dismissed for failure to join necessary parties pursuant to Fed. R. Civ. P. 12(b)(7).

---

[1] The Federal Rules of Civil Procedure referenced in this Order are made applicable to this adversary proceeding pursuant to various rules in Part VII of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7012, 7019, and 7024.

[2] Under Fed. R. Bankr. P. 2018(a) and Fed. R. Civ. P. 24 (b)(1)(B) the question of whether to permit a person to intervene is left to the Court's discretion.  However, under Fed. R. Civ. P. 24(a)(2) the Court is required to allow the intervention of a person who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

[3] Joinder is required if the person to be joined—

> claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

At the February 25, 2010 hearing on the Motion to Intervene, the Court continued the Motion to Intervene and allowed the parties to submit briefs thereon. During the March 18, 2010 hearing on the Motion to Dismiss, the Court asked the Defendant whether granting the Motion to Intervene would render moot that portion of the Defendant's Motion to Dismiss based on failure to join the Kanes. The Defendant agreed that it would. At the March 18, 2010 hearing, the Court found that the Kanes claimed an interest relating to the property that was the subject of the action (i.e., the funds transferred from the Debtor to the Defendant), that trying the adversary proceeding in the Kanes' absence would impair the ability of the Kanes to protect that interest, and that the Defendant would not adequately represent the Kanes' interest.[4] Therefore, the Kanes had satisfied Fed. R. Civ. P. 24(a)(2) and were permitted to intervene, rendering moot the failure-to-join aspect of the Defendant's Motion to Dismiss. Subsequently, the Court entered its *Order Denying the United States of America's Motion to Dismiss Complaint with Incorporated Memorandum of Law* [ECF No. 28] and its *Order Granting Motion to Intervene by Charles J. Kane and Harley N. Kane* [ECF No. 29].

On April 15, 2010, the Defendant filed the *United States of America's Answer and Third-Party Complaint* [ECF No. 39] (the "Third-Party Complaint"). In its Third-Party Complaint, the Defendant sought a judgment against the Kanes for any amount the Defendant was found to be liable to the Plaintiff. On April 19, 2010, the Kanes filed their *Answer by Intervenors* [ECF No. 40] as to the Plaintiff's Complaint. On April 26, 2010, the Kanes filed their *Motion to Dismiss Third Party Complaint* [ECF No. 45] (the "Motion to Dismiss Third-Party Complaint"),

---

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B).
[4] The Court made no finding at that time as to the actual property right of the Kanes in the funds subject to the Transfers, only that the Kanes claimed such an interest.

arguing that the Court lacked subject matter jurisdiction under 28 U.S.C. § 1334 to hear the Third-Party Complaint. At the June 17, 2010 hearing on the Motion to Dismiss Third-Party Complaint, the Court found that the Third-Party Complaint did not arise under or in a case under Title 11 of the United States Code. The Court also found that the Third-Party Complaint was not related to a case under Title 11 of the United States Code because the outcome of the Third-Party Complaint would not have an impact on the administration of the Debtor's estate – the allowance or disallowance of claims or the relative rights of potential creditors would not be impacted. Therefore, the Court lacked subject matter jurisdiction to hear the Third-Party Complaint. Accordingly, the Court entered its *Order Granting Motion to Dismiss Third Party Complaint* [ECF No. 66]. This order was not appealed.

On August 12, 2010, the Kanes filed their *Motion of Intervenors' Charles Kane and Harley N. Kane's to Withdraw the Reference and Memorandum of Law in Support* [ECF No. 103] (the "Motion to Withdraw the Reference") pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P. 5011 and Local Rule 5011-1. In the Motion to Withdraw the Reference, the Kanes asserted they were entitled to a jury trial in a United States District Court and therefore sought to have the United States District Court withdraw the reference to this Court of this adversary proceeding. On October 25, 2010, the District Court granted the Motion to Withdraw the Reference and withdrew the reference as to the trial of the above-captioned adversary, but left the reference with this Court as to all pre-trial matters, including resolution of dispositive motions. [ECF No. 125].

The consolidated trial of the Stewart Adversary Proceedings (the "Consolidated Trial") was held over six days – November 7, 9, and 10, 2011 and January 20, 23, and 24, 2012. On May 10, 2012, following the parties' submission of post-trial briefs, the Court entered its *Memorandum Opinion* [ECF No. 252, Case Number 09-01838-EPK; ECF No. 227, Case No. 09-01839-EPK] (the "Memorandum Opinion") which presents the Court's findings of fact and

conclusions of law.[5]  The Court entered separate final judgments in each Stewart Adversary Proceeding which incorporate the Memorandum Opinion.[6]  In the *Final Judgment* as to Charles Kane, the Court entered judgment in favor of Charles Kane as to 11 U.S.C. § 727(a)(2), 11 U.S.C. § 727(a)(5), 11 U.S.C. § 727(a)(7), and 11 U.S.C. § 523(a)(4).  The Court entered judgment in favor of Stewart *et al.* as to 11 U.S.C. § 523(a)(6), thereby excepting the Stewart Debt from Charles Kane's discharge.  [ECF No. 253, Case No. 09-01838-EPK].  In the *Final Judgment* as to Harley Kane, the Court entered judgment in favor of Harley Kane as to 11 U.S.C. § 727(a)(2), 11 U.S.C. § 727(a)(5), and 11 U.S.C. § 523(a)(4).  The Court entered judgment in favor of Stewart *et al.* as to 11 U.S.C. § 727(a)(7) and 11 U.S.C. § 523(a)(6), thereby denying Harley Kane's discharge and excepting the Stewart Debt from Harley Kane's discharge. [ECF No. 228, Case No. 09-01839-EPK].

In light of the Court's ruling in the Memorandum Opinion, the Court entered the Order to Show Cause, setting a hearing to determine whether the Kanes should be dismissed as intervening parties to the above-captioned adversary proceeding.  The Court's Order Granting Motion to Intervene by Charles J. Kane and Harley N. Kane was premised on the Court's finding that the Kanes claimed they owned the funds paid by the Debtor to the Defendant that are the subject of this action.  However, as discussed in the Order to Show Cause, the Court concluded in the Memorandum Opinion that the money transferred was property of the Debtor, not of the Kanes individually:

> The [Debtor], a Florida general partnership, is an entity distinct from its partners and has its own assets independent of its partners . . . That a partner may be entitled to a distribution under Florida law does not mean that some portion of the partnership's property is identified and set apart for the partner . . . . There is no support in Florida law for the [Kanes'] argument that amounts indicated as positive balances in their capital accounts with the [Debtor] mean

---

[5] The Memorandum Opinion is published as *Stewart Tilghman Fox & Bianchi, P.A. v. Kane (In re Kane)*, 470 B.R. 902 (Bankr. S.D. Fla. 2012).

[6] The Final Judgments are subject to appeal but are not stayed.

that equal sums of money held by the [Debtor] are therefore their personal assets. Assuming that the [Debtor] had the power under Florida law to make distributions to the [Kanes] . . . amounts distributable to the [Kanes] do not become their property until actually distributed. Money in the [Debtor's] bank account is the [Debtor's] money . . . The [Kanes] had no property interest in money held by the [Debtor] in its bank accounts and transfers made by the [Debtor] were transfers of the [Debtor's] property and not transfers of property of the [Kanes]. . . [T]he [Kanes] argue that payments made by the [Debtor] to the [Defendant] in satisfaction of the [Kanes'] personal income tax obligations are the equivalent of partnership distributions . . . however, [such distributions are distributions] of the [Debtor's] assets. Thus, for purposes of analysis under section 727(a)(2), the Court focuses only on transfers and expenditures made by the [Kanes] themselves, from their own funds, not payments made directly by the [Debtor].

*Stewart Tilghman Fox & Bianchi, P.A. v. Kane (In re Kane),* 470 B.R. 902, 932-33 (Bankr. S.D. Fla. 2012).

## II.    DISCUSSION

### a.    Collateral Estoppel

The Kanes are collaterally estopped from asserting that the funds transferred from the Debtor to the Defendant were property of the Kanes individually and not property of the Debtor. The Kanes assert that collateral estoppel does not apply in this matter for a number of reasons which the Court addresses below.

"[C]ollateral estoppel precludes relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Circuit 1998). Collateral estoppel applies when:

(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Pleming*, 142 F.3d at 1359 (internal citation omitted).

9

The first, second and fourth components of collateral estoppel are not in dispute.  The
issue of whether the Kanes held a property interest in the money transferred by the Debtor to
the Defendant is identical to the issue determined in the Stewart Adversary Proceedings.

This issue was actually litigated in the Stewart Adversary Proceedings. "[W]hen an
issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and
is determined, the issue is actually litigated." *Christo v. Padgett (In re Christo)*, 223 F.3d 1324,
1339 (11th Cir. 2000) (internal citations omitted).  Count I of each of the complaints (the
"Stewart Complaints") filed in the Stewart Adversary Proceedings addressed claims under 11
U.S.C. § 727(a)(2).  This provision requires the court to deny a discharge if the plaintiff proves,
on the part of the debtor, "(1) an intent to hinder, delay or defraud, (2) a creditor or an officer of
the estate, (3) by transferring, removing, destroying, mutilating or concealing, (4) property of
the debtor, (5) within one year before the petition date or after the petition date." *Stewart
Tilghman Fox & Bianchi, P.A.*, 470 B.R. at 931 (emphasis supplied).  In the Stewart Adversary
Proceedings, the relevant debtors were the Kanes individually.  In Count I of each of the
Stewart Complaints, Stewart *el al.* alleged:

> [Charles Kane/Harley Kane], with the intent to hinder, delay or defraud a
> creditor or an officer of the estate charged with custody of property under the
> Bankruptcy Code, has transferred, removed, destroyed, mutilated or concealed,
> property of [Charles Kane/Harley Kane] within one year before the Petition Date
> and/or property of the estate after the date of filing of the petition.

[ECF No. 1, Case No. 09-1838-EPK; ECF No. 1, Case No. 09-1839-EPK] (emphasis supplied).
During the Consolidated Trial, Stewart *el al.* presented the Transfers as evidence in support of
Count I of each of the Stewart Complaints.  The Court determined that the money transferred
from the Debtor to the Defendant was not property of the Kanes individually but was property
of the Debtor law firm. *Stewart Tilghman Fox & Bianchi, P.A.*, 470 B.R. at 932-33.  Therefore,
evidence of the Transfers did not satisfy 11 U.S.C. 727(a)(2) because property transferred for
purposes of 11 U.S.C. § 727(a)(2) must have been property of the Kanes individually. *Id.* at 933

("Thus, for purposes of analysis under section 727(a)(2), the Court focuses only on transfers and expenditures made by the Defendants themselves, from their own funds, and not payments made directly by the [Debtor]").  Accordingly, the issue of whether the Kanes held a property interest in the funds transferred from the Debtor to the Defendant was properly raised by the Stewart Complaints, submitted for determination in the Stewart Adversary Proceedings, and was actually determined by this Court in the Stewart Adversary Proceedings.  The Kanes had a full and fair opportunity to litigate this matter.  The issue of whether the Kanes held a property interest in the funds transferred from the Debtor to the Defendant was actually litigated in the Stewart Adversary Proceedings.

The Kanes assert that it was not critical and necessary, for purposes of ruling under 11 U.S.C. § 727(a)(2), for this Court to determine in the Stewart Adversary Proceedings that the funds subject to the Transfers were property of the Debtor and not property of the Kanes individually.  The Kanes contend that the Court entered judgment in favor of the Kanes as to 11 U.S.C. § 727(a)(2) because the Court concluded that the Kanes had no intent to hinder, delay or defraud creditors.  The Kanes are only partially correct.  In asserting that the Kanes' discharge should be denied pursuant to 11 U.S.C. § 727(a)(2), Stewart *et al.* alleged and presented evidence showing that the Kanes committed several distinct acts.  Among these were the Kanes' lavish spending, risky and speculative investments, and causing the Transfers from the Debtor to the Defendant.  As to the Kanes' lavish spending and risky and speculative investments, the Court determined that Stewart *et al.* had not met their burden in proving that the Kanes did these acts with the intent to hinder, delay or defraud creditors. *Stewart Tilghman Fox & Bianchi, P.A.*, 470 B.R. at 934.  Thus, as to the alleged acts of lavish spending and speculative and risky investments, judgment was entered in favor of the Kanes.  However, the Court had to separately determine whether the Transfers from the Debtor to the Defendant justified denying the Kanes their discharge pursuant to 11 U.S.C. § 727(a)(2).  As to these

11

Transfers, the Court did not determine that Stewart *et al.* had failed to meet their burden in proving that the Kanes caused the Transfers with the intent to hinder, delay or defraud creditors. The Court did not get to this question when considering the claims under 11 U.S.C. § 727(a)(2) because the Court determined that the money transferred was not property of the Kanes, the debtors in the Stewart Adversary Proceedings, but instead was property of the Debtor law firm. Because the Court determined that the fourth element of 11 U.S.C. § 727(a)(2) was lacking, the Court entered judgment under 11 U.S.C. § 727(a)(2) in favor of the Kanes with regard to the Transfers. The Court's determination that the funds transferred from the Debtor to the Defendant were not property of the Kanes was a critical and necessary part of the judgments in the Stewart Adversary Proceedings. Thus, all four components of collateral estoppel are satisfied as to this issue.

The Kanes contend that collateral estoppel does not apply to the issue of whether the money transferred from the Debtor to the Defendant was property of the Kanes because the Court made this determination in the alternative. The Kanes cite authority stating that alternative determinations will not be given offensive preclusive effect. As discussed above, however, this Court did not enter judgment for the Kanes as to 11 U.S.C. § 727(a)(2) in the Stewart Adversary Proceedings based on alternative findings. Rather, the Court separately determined that the "hinder, delay, or defraud" element of 11 U.S.C. § 727(a)(2) had not been proven as to two sets of acts, whereas the "property of the debtors element" had not been satisfied as to the Transfers. The Court's conclusion that the funds transferred from the Debtor to the Defendant were not property of the Kanes was not an alternative determination and the Court's finding that the funds transferred were not property of the Kanes has collateral estoppel effect here.

The Kanes cite the Eleventh Circuit case of *Deweese v. Town of Palm Beach* for the general proposition that "application of offensive collateral estoppel is also an abuse of

discretion where there is a significant likelihood of substantial unfairness." [ECF No. 294, p. 19]. This broad statement is not the law. The *Deweese* Court was not concerned with generalized unfairness, but was instead concerned with the unfairness of applying collateral estoppel to an issue which the party to be estopped did not have an "incentive to defend vigorously" in the prior proceeding. 688 F.2d 731, 734 (11th Cir. 1982) (internal citation omitted). Because 11 U.S.C. § 727(a)(2) required that Stewart *et al.* prove that the funds in question belonged to the Kanes individually, the Kanes had every incentive to litigate the issue in the Stewart Adversary Proceedings. There is no inherent unfairness in this Court ruling that the Kanes are collaterally estopped from asserting a property interest in the funds transferred from the Debtor to the Defendant.

### b.    Claimed Interest in the Subject Property or Transaction

Even if the Kanes are collaterally estopped from asserting that the money transferred from the Debtor to the Defendant was property of the Kanes individually, the Kanes contend that they may still properly claim an interest relating to the property or transaction that is the subject of this action and thus are entitled to intervene. They argue that the interest necessary to satisfy the first requirement of Fed. R. Civ. P. 24(a)(2) may be less than a direct ownership interest. The Kanes assert that they "had an interest in the property (funds) that the [Debtor] transferred to the [Defendant]. That interest related to their ownership interest in the [Debtor]." [ECF No. 294, p. 5]. Furthermore, the Kanes assert that they "were directly involved in the transaction between the [Debtor] and the [Defendant]." [ECF No. 294, p. 6]. For the Kanes, "[t]he test for intervention, as a matter of right, is whether the party attempting to intervene is interested <u>in the property or the transaction</u> between the parties involved in the suit." [ECF No. 294, p. 8] (emphasis in original). Therefore the Kanes contend that "[c]ollateral estoppel doesn't apply since this Court's ruling in the discharge action did not determine that

the [Kanes] lacked <u>any</u> interest in the property funds paid to the [Defendant], or the transaction by which the payment to the [Defendant] by the [Debtor] . . . extinguished the personal tax liability [of the Kanes]." [ECF No. 294, p. 17-18] (emphasis supplied).

The test proposed by the Kanes is not the test for intervention as a matter of right. Under Fed. R. Civ. P. 24(a)(2), "a party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." *Georgia v. United States Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002). "A legally protectable interest 'is something more than an economic interest . . . What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the [intervenor].'" *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting *U.S. v. South Florida Water Management District*, 922 F.2d 704, 710 (11th Cir. 1991) (emphasis in original). An interest contingent upon the outcome of other pending litigation is not a legally protectable interest. *Mt. Hawley Ins. Co.*, 425 F.3d at 1311 n.6.

As to the Kanes' asserted interest in the money transferred from the Debtor to the Defendant, the substantive law is clear: The Kanes' interest is not direct or substantial. "Partnership property is owned by the partnership as an entity, not by the partners as coowners. A partner has no interest that can be transferred, either voluntarily or involuntarily, in specific partnership property." Fla. Stat. § 620.8501 (1995). Instead, "[e]ach partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits." Fla. Stat. § 620.8401(2) (1995). Therefore, the Kanes' interest, by virtue of their ownership of the Debtor, in the money transferred from the Debtor to the Defendant is derivative, not direct. As to the Kanes' asserted interest in the Transfers as transactions, being involved in causing the Transfers does not translate into a direct, substantial and legally protectable ownership

14

interest in them as transactions. The Kanes are no doubt interested in the Transfers because, if the Plaintiff were to prevail in this adversary proceeding, the Defendant may have a cause of action against the Kanes to collect unpaid income taxes. However, this interest is contingent on the outcome of the instant adversary proceeding, and is therefore not legally cognizable for purposes of intervention.

The cases cited by the Kanes in the Kane Response are distinguishable. In *Pacific Mut. Life Ins. Co. v. American Nat. Bank & Trust Co. of Chicago*, the Court ruled that a limited partner's interest in property owned by the limited partnership was sufficient to permit the limited partner to intervene as a matter of right in a foreclosure suit against the limited partnership. 110 F.R.D. 272 (N.D. Ill. 1986). However, the *Pacific Mut. Life Ins. Co.* court reached this conclusion only after weighing the limited partner's interest against the impairment it would face if not permitted to intervene, and concluded that barring intervention would practically extinguish the limited partner's interest. *Pacific Mut. Life Ins. Co.,* 110 F.R.D. at 274-76. In the instant case, if the Kanes are barred from intervening, and complete relief is entered against the Defendant, the Defendant would still need to institute separate proceedings against the Kanes which they could then defend. In *CRI, Inc. v. Watson*, the court found that a mortgage broker had sufficient interest to intervene in a breach of contract suit brought by a real estate investments fixer against a client. 608 F.2d 1137 (8th Cir. 1979). However, the intervening mortgage broker was a direct party to the breached contract with a substantial and legally protectable monetary interest in seeing that the contract was honored. *See CRI, Inc.*, 608 F.2d at 1139.

The Kanes cite Fed. R. Civ. P. 24(a)(3) for the proposition that in order to intervene the Kanes merely have to show that they would be adversely affected by the disposition in this proceeding. [ECF No. 294, p. 12]. Under former Fed. R. Civ. P. 24(a)(3), intervention as a matter of right was available "when the applicant is so situated as to be adversely affected by a

15

distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof." *Levin v. Ruby Trading Corp.* 333 F.2d 592, 595 (2d Cir. 1964). Yet "the times they are a-changin','"[7] and Fed. R. Civ. P. 24(a)(3) has not been in existence since June 30, 1966. *See Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 132-33 (1967).

It might be true, as the Kanes argued, that with regard to intervention as a matter of right "where a proposed intervenor's interest will be prejudiced if it does not participate in the main action, the mere availability of alternative forums is not sufficient to justify denial of a motion to intervene." *Commodity Futures Trading Com'n v. Heritage Capital Advisory Services, Ltd.*, 736 F.2d 384, 387 (7th Cir. 1984) (citing *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Co.*, 600 F.2d 671, 681 (7th Cir. 1979). However, "[f]ailure to satisfy even one of [the Fed. R. Civ. P. 24(a)(2)] requirements is sufficient to warrant denial of a motion to intervene as a matter of right." *Commodity Futures Trading Com'n*, 736 F.2d at 386.

The authority cited by the Kanes in Section III of the Kane Response is inapplicable. The question resolved here is not a close one.

The Kanes are collaterally estopped from claiming the money transferred from the Debtor to the Defendant was property of the Kanes individually and not property of the Debtor law firm. In addition, the Kanes do not have a direct, substantial and legally protectable interest in the funds that were the subject of the Transfers or in the transactions giving rise to the Transfers for purposes of intervention in this action. Therefore, the Kanes are no longer entitled to intervene in the above captioned adversary proceeding as a matter of right under Fed. R. Civ. P. 24(a)(2).

---

[7] Bob Dylan, *The Times They Are a-Changin'*, *on* The Times They Are a-Changin' (Columbia Records

Whether to allow permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1)(B) is left to the discretion of the trial court. *Sellers v. U.S.*, 709 F.2d 1469, 1471 (11th Cir. 1983). Because the Defendant would need to engage in new proceedings against the Kanes to recover income taxes should the Defendant lose in the instant adversary proceeding, because there is a substantial likelihood that the Kanes will be called as witnesses in the instant adversary proceeding, and because the Defendant has sufficient incentive to raise many of the defenses that would be asserted by the Kanes in the instant adversary proceeding, the Court declines to allow the Kanes to remain as intervenors pursuant to Fed. R. Civ. P. 24(b)(1)(B).

The remainder of the arguments advanced by the Kanes in support of remaining as intervenors in this adversary proceeding are without merit.  The Kanes contend that their dismissal as intervenors "would not be proper because the <u>actual</u> <u>affirmative</u> <u>defenses</u> to the [Plaintiff's Complaint] were not determined adversely to the [Kanes]." [ECF No. 294, p. 9].  The Court fails to see why this is relevant.  The Kanes also argue that "[N]o position which was actually asserted by the [Kanes] in the Motion to Intervene . . . has changed." [ECF No. 294, p. 17].  But it does not matter whether the Kanes' position has remained constant.  The Court allowed the Kanes to intervene after the Kanes claimed a property interest in the funds transferred from the Debtor to the Defendant.  After a lengthy trial, the Court concluded that this claim was not supported by the facts or law.  Subsequently, the Court has determined that the Kanes do not have a direct, substantial or legally protectable interest in the money or transactions at issue.  Just because the Kanes have staked out a consistent position does not limit the Court from re-examining that position when circumstances change.  Finally, the Kanes assert that their dismissal as intervenors would deprive the Kanes of their constitutional right to a jury trial on the issues raised in the above-captioned adversary

---

1964).

proceeding. The Kanes seem to forget that the United States is the Defendant, not the Kanes. The Complaint does not request any form of relief against the Kanes. The Court dismissed the Defendant's Third Party Complaint against the Kanes for lack of subject matter jurisdiction and that ruling was not appealed. If the Plaintiff prevails against the Defendant, and the Defendant then pursues the Kanes, the Kanes can seek to exercise whatever constitutional rights they may have.

### c.    Joinder

In the Defendant's Response, the Defendant argues that the Kanes must remain parties to the above-captioned adversary proceeding because the Kanes are parties required to be joined pursuant to Fed. R. Civ. P. 19(a)(1)(B). Because the Court previously denied as moot that component of the Defendant's Motion to Dismiss alleging that the Kanes are necessary parties to this action, solely on the ground that the Court had granted the Kanes' Motion to Intervene, the Court revisits the Defendant's argument under Fed. R. Civ. P. 19. The Court determines that the Kanes are not required to be joined as parties under either prong of Fed. R. Civ. P. 19(a)(1)(B).

Fed. R. Civ. P. 19(a)(1) states:

*Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

>(A) in that person's absence, the court cannot accord complete relief among existing parties; or

>(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

>>(i) as a practical matter impair or impede the person's ability to protect the interest; or

>>(ii) leave an existing party subject to a substantial risk of

18

incurring double, multiple, or otherwise inconsistent obligations
because of the interest.

The Plaintiff has sued to avoid the Transfers under several statutes and to recover from the Defendant pursuant to 11 U.S.C. § 550. Under 11 U.S.C. § 550, "[o]nce a transaction has been avoided, the [trustee] may recover from: (a) the initial transferee; (b) the party for whose benefit the initial transfer was made; and/or (c) any subsequent transferee." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Services, Inc.)*, 408 F.3d 689, 703 (11th Cir. 2005). As the initial or subsequent transferee of the Transfers, the Defendant is a proper defendant in this case.[8] As the parties for whose benefit the Transfers were made, the Kanes were potential defendants in this action. The Plaintiff chose not to sue the Kanes – who are themselves bankrupt – and instead sued the Defendant. It is clear from the language of 11 U.S.C. § 550 that the Plaintiff has discretion in his choice of defendants. *See Leonard v. First Commercial Mortgage Co. (In re Circuit Alliance, Inc.)*, 228 B.R. 225, 236 (Bankr. D. Minn. 1998). The Defendant nevertheless seeks to utilize Rule 19 to force the Plaintiff to pursue recovery from the Kanes.

The Defendant argues that if the Kanes are not joined in this action the Defendant will be subject to double, multiple or otherwise inconsistent obligations. There is no possibility of double, multiple or otherwise inconsistent obligations burdening the Defendant. If the Plaintiff prevails in this adversary proceeding and the Court orders the Defendant to pay the Plaintiff the amounts transferred from the Debtor to the Defendant, the Defendant may pursue the Kanes to recover such amounts. It is possible that the Defendant may not prevail against the Kanes. Yet, even under this worst case scenario the Defendant would incur only <u>one</u> payment

---

[8] The Court has before it cross-motions for summary judgment addressing, in part, whether the Defendant was the initial transferee or a subsequent transferee of the Transfers for purposes of 11 U.S.C. § 550. The Defendant has argued that the Transfers were in effect a two-step transaction involving, first, a distribution to the Kanes and, second, payment to the Defendant.

obligation – to the Plaintiff.  The Kanes are not required to be joined as parties pursuant to Fed. R. Civ. P. 19(a)(1)(B)(ii).

Neither are the Kanes required to be joined as parties under Fed. R. Civ. P. 19(a)(1)(B)(i) on the ground that the action might impair or impede the Kanes' ability to protect their claimed interest in the subject of the action.  The Court has determined that the money transferred from the Debtor to the Defendant was not the property of the Kanes individually and that the Kanes have no direct, substantial and legally protectable interest in the transferred money or the transaction.  While the Kanes may be interested in defending the Transfers in this adversary proceeding to avoid a subsequent action brought by the Defendant, such an interest is not the type of legally protectable interest requiring joinder under Fed. R. Civ. P. 19(a)(1)(B). *Tolz v. U.S. (In re Brandon Overseas, Inc.)*, 2010 WL 2812944, at *9 (Bankr. S.D. Fla. July 16, 2010).

III.    **EXISTING ORDER WITHDRAWING REFERENCE FOR TRIAL**

Neither the Plaintiff nor the Defendant requested a jury trial in this action.  However, because the Kanes had requested a jury trial the District Court determined to withdraw the reference of this adversary proceeding solely for purposes of trial. [ECF No. 125].  The parties may wish to request a further order from the District Court, vacating the District Court's existing order withdrawing the reference for trial or confirming the same.  Absent further ruling of the District Court, this Court will address all pre-trial matters, including dispositive motions, and will certify to the District Court when the parties are ready to proceed to trial, as previously directed by the District Court.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Charles J. Kane and Harley N. Kane are DISMISSED as intervenors in the above-captioned adversary proceeding.

### 

Copies furnished to:

All parties of record by the Clerk of Court