[TAGGED]



**ORDERED in the Southern District of Florida on July 16, 2012.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

KANE & KANE, A PARTNERSHIP,

     Debtor.
_____/

MICHAEL R. BAKST, Trustee in
Bankruptcy for KANE & KANE, A
PARTNERSHIP,

     Plaintiff,
v.

UNITED STATES OF AMERICA,
CHARLES J. KANE and
HARLEY N. KANE,

     Defendants.
_____/

Case No.: 09-15556-EPK
Chapter 7

Adv. Proc. No.:10-01022-EPK

<u>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**</u>

     Michael R. Bakst, as chapter 7 trustee (the "Trustee") for the bankruptcy estate of

Kane & Kane, a Partnership (the "Debtor"), commenced this adversary proceeding by filing

a complaint [ECF No. 1] (the "Complaint") against the United States of America (the

"Defendant"). In the Complaint, the Trustee seeks (a) in Count I (Actual Fraud) avoidance

1

and recovery of certain fraudulent transfers under §§ 544(b), 548(a)(1)(A) and 550, and Fla. Stat. §§ 726.105(1)(a) and 726.108(1); (b) in Count II (Constructive Fraud) avoidance and recovery of certain fraudulent transfers under §§ 548(a)(1)(B) and 550; (c) in Count III (Constructive Fraud) avoidance and recovery of certain fraudulent transfers under §§ 544(b)(1) and 550, and Fla. Stat. §§ 726.105(1)(b), 726.106(1) and 726.108; and (d) in Count IV, recovery of the avoided transfers pursuant to § 550.[1]

Before the Court are the *United States of America's Motion for Summary Judgment and Memorandum of Law in Support* [ECF No. 227] (the "United States Motion") and the *Plaintiff/Trustee's Motion for Partial Summary Judgment, Motion to Exclude Various Expert Testimony, and Incorporated Memorandum of Law in Support Thereof* [ECF No. 228] (the "Trustee Motion").[2]  For the reasons that follow, the Court (a) denies the United States Motion; (b) grants the Trustee's request for summary judgment in part, ruling that the Defendant was an "initial transferee" within the meaning of § 550(a)(1) and thus the Defendant cannot rely on the defense presented in § 550(b), and otherwise denies the Trustee's request for summary judgment; (c) denies the Trustee's request to exclude the expert witness report and deposition testimony of James Reda; and (d) grants the Trustee's request to exclude the expert witness report and deposition testimony of William Michaelson.

---

[1] Unless otherwise indicated, the word "section" or the symbol "§" in this Order refers to a section or sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

[2] Charles J. Kane and Harley N. Kane filed *Intervenors' Charles J. Kane and Harley N. Kane Response to Plaintiff/Trustee's Motion for Partial Summary Judgment, Incorporated Memorandum of Law, and Cross-Motion for Summary Judgment and Motion to Exclude Expert Testimony* [ECF No. 266].  By separate order the Court dismissed the intervenors from this action.  Thus, the Court has not considered the response filed by Charles and Harley Kane.

**BACKGROUND**

The Debtor was a general partnership formed in the mid-1990s pursuant to Fla. Stat. § 620.81001 *et seq.* The Debtor operated as a law firm specializing in plaintiffs' Personal Injury Protection ("PIP") litigation, representing primarily medical service providers. Charles J. Kane and Harley N. Kane (together, the "Kanes") were the Debtor's only equity partners. The Debtor maintained detailed accounting records, including ledgers for partner capital accounts for each of the Kanes.

This adversary proceeding focuses on six monetary transfers (the "Transfers") from the Debtor to the Defendant between April 14, 2008 and October 17, 2008. In each instance, funds were paid directly from the Debtor's operating account at the direction of one or both of the Kanes and were received and applied by the Defendant in satisfaction of the Kanes' personal income tax obligations. The Transfers aggregate $727,871.90. The Kanes had routinely paid their personal income tax liabilities by directing the Debtor to issue checks payable to the Defendant. The Debtor's accounting records reflect each of such payments, including the Transfers, in the relevant partner capital account as distributions to the Kanes.

The Transfers were as follows:

| Date | Tax Amount Paid | Taxpayer |
|------|-----------------|----------|
| April 14, 2008 | $310,000.00 | Charles J. Kane |
| April 14, 2008 | $290,000.00 | Harley N. Kane |
| August 28, 2008 | $7,706.00 | Charles J. Kane |
| September 15, 2008 | $60,000.00 | Charles J. Kane |
| September 15, 2008 | $60,000.00 | Harley N. Kane |
| October 7, 2008 | $165.90 | Charles N. Kane |

On June 18, 2004, the law firms of Stewart Tilghman Fox & Bianchi, P.A., William C. Hearon, P.A., and Todd S. Stewart, P.A. (collectively, "Stewart Tilghman") filed a lawsuit (the "State Court Litigation") in Palm Beach Circuit Court (the "State Court") against the

Firm, the Kanes and others.  The State Court Litigation proceeded to a bench trial between September and November of 2007 on claims of fraudulent inducement, quantum meruit/unjust enrichment and constructive trust.  Stewart Tilghman asked the State Court to enter judgment against the Debtor in the amount of $5,250,000.00, plus prejudgment interest, less an acknowledged set-off of $1,130,884.80.  The Debtor contended it was not liable for any sums and asked the State Court to enter judgment in its favor and against Stewart Tilghman.  The State Court took the matter under advisement at the conclusion of trial.

On April 14, 2008, while the State Court Litigation was still under advisement, the Debtor made the first two of the Transfers to the Defendant.

On April 24, 2008, the State Court entered a final judgment against the Debtor and the Kanes, jointly and severally, for $2,000,000.00, plus prejudgment interest of $769,534.25, for a total of $2,769,534.25.

On May 5, 2008, the Debtor filed in the State Court a motion for reconsideration and for a new trial.  While that motion was pending before the State Court, the Debtor made the remaining Transfers to the Defendant.

On November 7, 2008, the State Court entered an order denying the Debtor's motion for rehearing and for a new trial.

Ten days later, on November 17, 2008, the Debtor and the Kanes filed chapter 11 petitions in this Court.  Stewart Tilghman filed a motion to dismiss the chapter 11 cases as having been filed in bad faith.  After a full evidentiary hearing, this Court ruled on March 20, 2009 that the chapter 11 petitions of the Debtor and the Kanes were filed in bad faith and dismissed the cases effective March 30, 2009.

The Debtor and the Kanes filed chapter 7 petitions on March 30, 2009.  This adversary proceeding is filed in the Debtor's chapter 7 case.

4

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir. 1997).  In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Id*.

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id*. (*citing Anderson*, 477 U.S. at 252).

At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp*., 323 F.3d 920, 924 (11th Cir. 2003).

**RELIEF REQUESTED**

The Trustee requests summary judgment in his favor on Counts II, III and IV of the Complaint. These are the counts alleging that the Transfers were constructively fraudulent under § 548(a)(1)(B) and Fla. Stat. § 726.106(1), brought pursuant to § 544(b), and requesting recovery of any avoided Transfers. The Trustee also requests that the Court exclude the expert reports and deposition testimony of two experts offered by the Defendant: James F. Reda, whose testimony is offered as evidence demonstrating that the Debtor received reasonably equivalent value in exchange for the Transfers, and William M. Michaelson, whose testimony is offered as evidence demonstrating that the Debtor was solvent when the Transfers were made.

The Defendant requests summary judgment in its favor. In support of this request, the Defendant argues that the Kanes were the initial transferees of the Transfers, thus making the Defendant a subsequent transferee, that the Defendant took for value in good faith and without knowledge of the voidability of the Transfers, and that the Defendant thus has a complete defense to this action under § 550(b)(1).

**MOTIONS TO EXCLUDE EXPERT REPORTS AND DEPOSITION TESTIMONY**

The trial judge serves a gatekeeping role with regard to the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). He or she is tasked, pursuant to the Federal Rules of Evidence, with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. The court's gatekeeping function pursuant to Fed. R. Evid. 702 applies equally to all expert opinions, including those based in scientific, technical or other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). The proponent of expert testimony bears the

burden to show that his expert meets the requirements of Fed. R. Evid. 702 and applicable case law. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Rule 702 contains three basic, distinct concepts: qualification, reliability and helpfulness. *Id.* It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"The *Daubert* regime can play a role during the summary judgment phase of civil litigation. If proffered expert testimony fails to cross *Daubert*'s threshold for admissibility, a district court may exclude that evidence from consideration when passing upon a motion for summary judgment." *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997). "[A]t the junction where *Daubert* intersects with summary judgment practice, *Daubert* is accessible, but courts must be cautious—except when defects are obvious on the face of a proffer—not to exclude debatable scientific evidence without affording the proponent of the evidence adequate opportunity to defend its admissibility." *Id.*

A hearing to consider the factors articulated in *Daubert* is not always necessary. *See id.* n.3. Whether to hold a hearing lies within the Court's discretion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special

briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether* that expert's relevant testimony is reliable.").   Here, the parties have thoroughly briefed the *Daubert* issues and there is an adequate basis on the record before the Court from which to determine the reliability and validity of the experts' opinions. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 248-49 (6th Cir. 2001).  A hearing is not required in this case.

**James F. Reda**

The Defendant offers the expert witness report and deposition testimony of James F. Reda.   In his report, Mr. Reda presents two independent conclusions: (1) it is common for a business such as the Debtor law firm to make direct tax payments to the Defendant to satisfy the tax obligations of its principals, particularly when the entity is a small, closely-held organization that does not itself pay corporate income tax, and (2) the Transfers were made in exchange for reasonably equivalent value in the form of services rendered by the Kanes to the Debtor.  The parties argue on the admissibility of both of these conclusions. However, the Defendant offers the first opinion to counter the Trustee's allegations of actual fraud, which are not presently before the Court.  Consequently, the Court does not here rule on the admissibility of Mr. Reda's opinion addressing the practice of small, closely-held businesses paying the personal tax obligations of their principals.  The Court rules only on the admissibility of Mr. Reda's conclusion that the Transfers were made in exchange for reasonably equivalent value in the form of services rendered by the Kanes to the Debtor.

The Trustee alleges that Mr. Reda is not qualified to render his expert opinion, arguing that Mr. Reda has never provided an opinion on the reasonableness of an attorney's compensation and that in Mr. Reda's career he has assisted less than 10 attorneys in salary

negotiations.

The Court finds that Mr. Reda is qualified to render an opinion on whether the services provided by the Kanes to the Firm represent reasonably equivalent value for the Transfers. Mr. Reda has over 23 years of experience consulting on executive compensation. He has relevant experience advising clients in connection with compensation of law firm partners and associates focusing in particular on productivity concerns. This experience includes small law firms such as the Debtor. Through his own firm, James F. Reda & Associates, LLC, Mr. Reda provided litigation advice in cases involving attorney compensation. Mr. Reda has testified previously in a fraudulent transfer case as to whether compensation received by the defendant was reasonable.

The Trustee argues that the methodology Mr. Reda employed in reaching his conclusion that the Debtor received reasonably equivalent value from the Kanes is not reliable.

To determine the reasonableness of the aggregate compensation provided by the Debtor to the Kanes, Mr. Reda approached the question from two points of view, taking into account both whether the total amount of compensation provided to the Kanes was reasonable in light of the Debtor's income and expenses and also whether the services performed by the Kanes were consistent with the compensation provided.

To determine whether the total compensation provided by the Debtor was reasonable, Mr. Reda started with information from the 2009 Am Law 100 Survey. This survey presents data on revenues and compensation of partners at the 100 largest law firms in the United States. Mr. Reda divided the aggregate compensation of partners by the gross revenues of the Am Law 100 firms to determine a compensation ratio. He performed additional statistical analyses and then determined the median compensation ratio for the Am Law 100 firms among other comparators. Mr. Reda concluded that total

9

compensation provided to the Kanes was slightly above median levels for 2007 and considerably below median levels for 2008.

In determining that the services rendered by the Kanes to the Debtor were appropriate in light of the compensation received, Mr. Reda noted that: (1) contribution of the Kanes was vital to the success of the Debtor; (2) the Kanes have a total combined experience of 63 years in the practice of law (45 years for Charles Kane and 18 years for Harley Kane); (3) the Kanes performed fundamental supervisory roles and managerial functions that were critical to the profit making of the Debtor; (4) the Kanes were responsible for the business development of the Debtor and for the increase of its client base; and (5) the Kanes were devoted full time to the success of the Debtor.

Mr. Reda concluded that based upon his review of the compensation arrangements for the Kanes, taking into account the Debtor's revenues and expenses during the relevant periods, and in comparison to relative compensation paid to partners in other law firms, the Transfers were made in exchange for reasonably equivalent value in the form of services rendered by the Kanes to the Debtor.

The Trustee raises numerous challenges to Mr. Reda's opinion. The Trustee argues, among other things, that Mr. Reda's method is not subject to peer review or calculation for rate of error; that the annual revenue and partner compensation figures used by Mr. Reda are based on self-reporting and are partly estimated by Am Law and so are not reliable; that the Debtor, a small Florida firm focusing on PIP practice, cannot be compared to the Am Law 100, the largest firms in the country; and that Mr. Reda did not consider the Debtor's contingent liabilities or financial condition in rendering his opinion.

The requirements of Fed. R. Evid. 702 apply equally to all types of expert testimony, be it medical, scientific, statistical, accounting, valuation or, as here, attorney compensation. However, the application of Rule 702 differs slightly depending on the

nature of the proposed expert testimony. The text of the rule itself reflects this. Rule 702 acknowledges that a witness may be qualified based on his or her experience in addition to formal training or education. The proposed expert's knowledge need not be scientific or technical; it can be other specialized knowledge including that obtained through appropriate experience. A central question in the Court's inquiry is whether the proffered opinion will help the trier of fact to understand the evidence or to determine a fact in issue. The opinion, to be admitted, must be based on sufficient facts or data, be the product of reliable principles and methods, and such principles and methods must be reliably applied to the facts of the case. While peer review is an appropriate consideration, particularly in fields of science, it is not required. Outside of a narrow range of fields, statistical reliability of the data is difficult or impossible to ascertain. The data relied on must be appropriate to the task, but it need not be perfect data, unassailable for all purposes, as its shortcomings may be taken into account by the trier of fact in weighing the evidence. Likewise, the assumptions made by the expert, if any, should be laid out clearly so that they may be tested by the trier of fact.

Mr. Reda looked to a respected source to obtain baseline data for partner compensation in law firms. He applied statistical analyses to relate that data to the Debtor, admittedly not part of the universe of firms used to compile the data. He presented his analysis in a logical manner making all of his assumptions transparent. Rule 702 provides a threshold for admissibility. Mr. Reda's proposed opinion as to the reasonableness of the value of services rendered by the Kanes in exchange for the Transfers meets that threshold. The Trustee's challenges to Mr. Reda's opinion properly go to the weight to be given to that opinion and not to its admissibility. As such, Mr. Reda's report and deposition testimony are admissible under Fed. R. Evid. 702.

**William M. Michaelson**

The Defendant offers the expert witness report and deposition testimony of William Michaelson as evidence that the Debtor was solvent at the time of the Transfers. The Trustee seeks to exclude Mr. Michaelson's opinion. The Trustee offers the expert witness report and deposition testimony of Robert Zucker as evidence that the Debtor was not solvent at the time of the Transfers. Both Mr. Zucker and Mr. Michaelson analyzed the financial condition of the Debtor at two points in time: April 13, 2008 and September 14, 2008. As Mr. Michaelson explained: "Based on the dates the alleged fraudulent transfers were made and the years the tax liabilities were applicable to, we concluded that our determination of solvency or insolvency had to be made at multiple dates. We further concluded it was more practical to utilize two dates, which we believe are representative of the net worth of the parties surrounding the transfer due dates." April 13, 2008 was prior to entry of the State Court Judgment. September 14, 2008 was after entry of the State Court Judgment but prior to the State Court's denial of the Debtor's motion for rehearing. The State Court Judgment was not subject to execution until later, in November, 2008, when the State Court denied the Debtor's motion for rehearing.

The parties acknowledge that the only material difference between the expert witness reports of Messrs. Michaelson and Zucker is the value of the contingent liability represented by the State Court Judgment (the "Contingent Liability"). Mr. Zucker assigned a monetary value for the Contingent Liability at April 13, 2008 and at September 14, 2008. In contrast, Mr. Michaelson gave no value to the Contingent Liability both prior to and even after entry of the State Court Judgment. Based almost solely on this variable, Mr. Zucker concluded that the Debtor was insolvent on both April 13, 2008 and September 14, 2008 and Mr. Michaelson concluded that the Debtor was solvent on both dates.

12

The Trustee argues that Mr. Michaelson's valuation of the Contingent Liability at zero does not comply with binding case law in this circuit, and that his reliance on Generally Accepted Accounting Principles ("GAAP") to value the Contingent Liability is not appropriate in this case.

The Eleventh Circuit Court of Appeals has specifically addressed the valuation of contingent liabilities in connection with determining solvency of the debtor for purposes of a fraudulent transfer action. *Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, 490 F.3d 1325 (11th Cir. 2007). In *Advanced Telecommunication*, the Eleventh Circuit held that to value a contingent liability the court must "calculate the present value of the liability – the expected cost of the liability times the estimated chance of it ever occurring. Unless either the expected cost or the chances of it occurring are equal to zero (that is, the liability is costless, or the chances of it happening are negligible), the estimated value should be more than zero." *Id.* at 1335. Assigning a dollar value of zero to a contingent liability is "the equivalent of saying that there was no chance whatsoever any liability would be incurred." *Id.* at 1336.

Mr. Michaelson explained his zero valuation of the Contingent Liability as follows:

> On November 14, 2008, a Notice of Appeal was filed with the Fourth District Court of Appeals regarding the Judgment entered by the order issued by Judge Crow in the lower court. We discussed this matter with Mr. Charles Kane and his attorney in order to determine what the probability of success in reversing all or most of the Judgment assessed. On April 26, 2006, Irwin Gilbert, Esq. issued a letter of opinion as to the merits of the case and the ultimate outcome through the course of litigation. He states "I expect this case will be resolved substantially in favor of Charles and Harley Kane and their law firm." The defendants have relied upon Mr. Gilbert's opinion throughout the course of the litigation and the appeal. Mr. Kane informed us that due to the errors by Judge Crow applying the evidence submitted by the witnesses to the facts of the case, Mr. Kane's attorneys advised him that there is a high likelihood that the entire Judgment will be overturned. As of the date of this report, the initial briefs, in the appeals case, are due on November 20, 2010.

> In accordance with Generally Accepted Accounting Principles (GAAP)

SFAS 5, a contingent liability is only recorded if, one, a loss is probable, and two, the amount of the loss can be at least reasonably estimated.  Due to the opinion of Mr. Kane's counsel, who he relied on in instituting the Appeal we believe the chance of the contingency becoming an actual loss is reasonable [sic] possible.  Under GAAP, the definition of "reasonably possible" is "the chance of the future event occurring is more than remote, but less than likely."  Even if the loss can be estimated, which may not be the case, and the chance of it occurring are [sic] only reasonably possible, no liability should be recorded under GAAP.

Mr. Michaelson recognized that the possibility of the State Court Litigation resulting in a liability for the Debtor was "reasonably possible."  He defined this, consistent with GAAP, as "more than remote, but less than likely."  A risk of loss that is "more than remote" is certainly not, in the words of the Eleventh Circuit, "negligible."  *Id*. at 1335.  Its chance of occurring is not "zero."  *Id*.  Mr. Michaelson does not suggest that the amount of the liability would be zero if there was an enforceable judgment entered against the Debtor.  Thus, under prevailing Eleventh Circuit law, taking into account Mr. Michaelson's own estimation that the risk of loss represented by the State Court Litigation was "reasonably possible," Mr. Michaelson was required to assign a value to the Contingent Liability that was not zero.  *See id*. at 1336.  Because he did not do this, Mr. Michaelson's expert opinion is not helpful to the trier of fact and should not be considered under Rule 702.

The Trustee argues that reliance on GAAP is not appropriate in any case where the court must value a contingent liability for purposes of determining solvency in an avoidance action.  Although accurate in this case, the Trustee's argument does not have universal application.  Where a contingent liability has a likelihood of attaching that is greater than zero but less than "probable," even where the magnitude of the loss is potentially material, GAAP does not require it to be reported.  That is, a financial statement would not reflect the contingent liability.  This is not consistent with the standard outlined in *Advanced Telecommunication, supra*.  Consequently, in a case such as the one before the Court where the potential loss would be a large monetary amount, but the likelihood of loss is deemed

14

(at least by one proposed expert witness) as not probable, the resulting GAAP treatment cannot be used in determining insolvency.  In this case, GAAP is not relevant.  However, when the likelihood of loss is at least "probable" as that term is used in GAAP, then GAAP would require reporting the contingent liability and the valuation obtained likely would be relevant to a court's solvency analysis.  In short, while GAAP analysis for a contingent liability is not helpful in this case, it could be helpful in another.

The Defendant argues that because Mr. Michaelson is an accountant, not a lawyer, he must apply GAAP or else he would be subject to disqualification for failure to follow industry standards.  The Defendant argues that the trier of fact should be permitted to compare the GAAP standard and the *Advanced Telecommunication* standard and that the issue is a matter of the weight to be given to Mr. Michaelson's opinion.  The Defendant's response completely misses the mark.  GAAP is the "industry standard" for purposes of preparing financial statements.  In this case, in light of Eleventh Circuit case law directly on point, GAAP is clearly not the applicable standard for valuing the Contingent Liability.  An expert opinion based on a standard so completely at odds with the standard delineated by the Eleventh Circuit is not a matter going to the weight of the evidence.  The proposed opinion should not be considered by the trier of fact.

**TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**

The Trustee requests summary judgment in his favor on Counts II, III and IV of the Complaint.  These are the counts alleging that the Transfers were constructively fraudulent under § 548(a)(1)(B) and Fla. Stat. § 726.106(1), brought pursuant to § 544(b), and requesting recovery of any avoided Transfers.

Section 548(a)(1)(B) provides in relevant part:

(a) (1) The trustee may avoid any transfer (including any transfer to or for

15

the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

   (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

Section 726.106(1) of the Florida Statutes provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Both the Bankruptcy Code and Florida law require the Trustee to prove that (a) the Transfers were of an interest of the Debtor in property; (b) the Transfers were made within 2 years[3] of the filing of the petition; (c) the Debtor received less than reasonably equivalent value in exchange for the Transfers; and (d) the Debtor was insolvent on the dates of the Transfers or became insolvent as a result of the Transfers.

There is no dispute that the Transfers were of an interest of the Debtor in property or that the Transfers were made within the relevant timeframe prior to the filing of the petition.  The parties dispute whether the Debtor received less than reasonably equivalent value in exchange for the Transfers and whether the Debtor was insolvent on the dates of the Transfers or became insolvent as a result of the Transfers.

---

[3] While the "look back" period is longer under Florida law, Fla. Stat. § 726.110, all the Transfers occurred within 2 years of the petition date and so are within the relevant periods under both the Bankruptcy Code and Florida law.

**Reasonably Equivalent Value**

The Trustee must prove that the Debtor did not receive reasonably equivalent value in exchange for the Transfers.  "Value" is defined in § 548 as "property, or satisfaction or securing of a present or antecedent debt of the debtor."  11 U.S.C. § 548(d)(2)(A).  Under Florida law, "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied."  Fla. Stat. § 726.104. "By its terms and applications, the concept of 'reasonably equivalent value' does not demand a precise dollar-for-dollar exchange."  *Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, 490 F.3d 1325, 1336 (11th Cir. 2007) (citation omitted).  The Trustee may not avoid the Transfers if the Transfers conferred an economic benefit upon the Debtor, either directly or indirectly.  *Gen. Elec. Credit Corp. of Tenn. v. Murphy (In re Rodriguez)*, 895 F.2d 725 (11th Cir. 1990); *see also In re Advanced Telecomm. Network, Inc.*, 490 F.3d at 1336 ("benefit received need not be entirely 'direct'").

The Trustee argues that at the time of the Transfers the Debtor owed nothing to the Defendant or the Kanes.  In support, the Trustee points to the deposition of the Defendant's expert witness, James Reda.  Mr. Reda testified that the Debtor did not have any obligations to the Defendant and that he was not aware of any sum the Debtor owed to the Kanes.[4]

The Defendant asserts that the indirect benefit rule applies in this case.  Under the indirect benefit rule, if a transfer on behalf of a third party produces a concomitant economic benefit that ultimately flows to the debtor, even if the consideration for the transfer does not flow directly to the debtor, the debtor receives reasonably equivalent value and the transfer cannot be avoided.  *Pummill v. Greensfelder, Hemker & Gale (In re*

---

[4] From Mr. Reda's testimony, it is unclear whether he intended to say that the Debtor did not owe anything to the Kanes on both relevant dates or only on April 13, 2008.

*Richards & Conover Steel, Co.)*, 267 B.R. 602, 613-14 (B.A.P. 8th Cir. 2001). The Defendant

offers the expert witness report and deposition testimony of James Reda, who concluded

that the Debtor received reasonably equivalent value in exchange for the Transfers in the

form of services rendered by the Kanes. As discussed above, Mr. Reda's testimony is not

excluded from consideration. It is possible that the services rendered by the Kanes

constitute reasonably equivalent value for the Transfers. The trier of fact should be

permitted to weigh Mr. Reda's opinion in light of all other evidence admitted at trial. There

are genuine disputes of material fact as to whether the Debtor received reasonably

equivalent value for the Transfers. Summary judgment is not appropriate on this issue.

### Insolvency

The Trustee must prove that the Debtor was insolvent on the date of the Transfers

or that the Debtor became insolvent as a result of the Transfers.

For purposes of a partnership, the term "insolvent" is defined in the Bankruptcy

Code as:

> financial condition such that the sum of such partnership's debts is greater
> than the aggregate of, at a fair valuation—
>
> **(i)** all of such partnership's property . . . ; and
>
> **(ii)** the sum of the excess of the value of each general partner's
> nonpartnership property . . . over such partner's nonpartnership debts.

11 U.S.C. § 101(32)(B).

> Under Florida law,
>
> (1) A debtor is insolvent if the sum of the debtor's debts is greater than all of
> the debtor's assets at a fair valuation.
>
> (2) A debtor who is generally not paying his or her debts as they become due
> is presumed to be insolvent.

(3) A partnership is insolvent under subsection (1) if the sum of the partnership's debts is greater than the aggregate, at a fair valuation, of all of the partnership's assets and the sum of the excess of the value of each general partner's nonpartnership assets over the partner's nonpartnership debts.

(4) Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under ss. 726.101-726.112.

(5) Debts under this section do not include an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset.

Fla. Stat. § 726.103.

The Trustee submits the expert witness report of Mr. Zucker to show that the Debtor was insolvent on April 13, 2008 and on September 14, 2008. As discussed above, the Court will not consider the contrary expert witness report of Mr. Michaelson offered by the Defendant. The Defendant offers no other direct evidence to counter Mr. Zucker's conclusion that the Debtor was insolvent. However, the Defendant argues that summary judgment based solely on the expert testimony of Mr. Zucker is not appropriate in this case. The Defendant argues that it intends to challenge Mr. Zucker's credibility, methodology and qualifications, and that the trier of fact should have the opportunity at trial to weigh Mr. Zucker's testimony in light of this information. As examples of its potential challenges at trial, the Defendant cites Mr. Zucker's statement that the insolvency methodology he used was unique to bankruptcy and this case was the first time he did such an analysis, that Mr. Zucker only became the proffered expert in this matter after his colleague who researched, prepared and authored the report lost his CPA license, and that Mr. Zucker derived the standard he used in his report from a case that he had never heard of prior to his colleague's preparation of the report.

In general, the "grant of a motion for summary judgment is often inappropriate where the evidence bearing on crucial issues of fact is in the form of expert opinion

19

testimony." *Webster v. Offshore Food Service, Inc.*, 434 F.2d 1191, 1193 (5th Cir. 1970).
This is so because the "trier of fact is entitled to weigh the credibility of the witness and to
value his testimony in light of his demeanor on the stand" and because "the trier of fact is
not bound by expert testimony and may substitute its own common-sense judgment for that
of the experts." *Id.* There is a narrow exception to this rule, "when a party opposing
summary judgment fails to present evidence sufficient to make an issue of an expert's
conclusions—such as contrary opinion evidence or evidence tending to undermine the
expert's credibility or qualifications—and when 'the trier of fact would not be at liberty to
disregard arbitrarily the unequivocal, uncontradicted, and unimpeached testimony of an
expert witness,' expert testimony may form the basis of summary judgment." *Watson v.
Allstate Tex. Lloyd's*, 224 Fed. Appx. 335, 342 (5th Cir. 2007) (quoting *Webster*, 434 F.2d at
1193-94).

Although expert testimony is often helpful in assessing solvency, a determination of
the Debtor's solvency at the time of the Transfers does not require expert testimony.
Finding whether the Debtor was insolvent, under the definitions noted above, does not
present technical questions beyond the competence of lay determination. *See Wingster v.
Head,* 318 Fed. Appx. 809, 815-16 (11th Cir. 2009) (determination of medical causation
requires expert testimony). The Defendant challenges Mr. Zucker's credibility,
methodology and qualifications. In light of these concerns, the trier of fact should be
permitted to hear Mr. Zucker explain how he reached the conclusion that the Debtor was
insolvent and may then determine the appropriate weight to be accorded to Mr. Zucker's
testimony. Under the circumstances of this case, it is not appropriate to enter summary
judgment in favor of the Trustee on the issue of solvency.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In the United States Motion, the Defendant argues that it is entitled to summary judgment determining that the Defendant was not an initial transferee of the Transfers within the meaning of § 550(a)(1).  The Defendant argues that the Transfers were, in effect, a two-step transaction involving, first, a distribution by the Debtor to each of the Kanes and, second, payment by the Kanes to the Defendant.  The Defendant argues that the Kanes were thus the initial transferees of the Transfers and that the Defendant, as a subsequent transferee, has a complete defense in this case under § 550(b)(1) because it accepted the Transfers for value and in good faith without knowledge of the voidability of the Transfers.

The Trustee has the burden of proving all aspects of the alleged fraudulent transfers under §§ 548 and 550(a)(1) and the parallel Florida statutes.  This includes proving that the Defendant is an initial transferee within the meaning of § 550(a)(1) if relevant to the action.  *See Kapila v. IRS (In re ATM Fin. Servs., LLC)*, 446 B.R. 564, 568 (Bankr. M.D. Fla. 2011) (plaintiff must prove that the defendant was the initial transferee).  The Defendant mistakenly expands this burden, arguing that the Trustee also has the burden of proving that the Defendant lacked good faith under § 550(b).  Although § 550(b) does not set out the burden of proof, as with the good faith defense provided by § 548(c) most courts hold that good faith under § 550(b) is a defense that must be raised and proven by a subsequent transferee.  *Id.* at 568 n.24 (citing various cases); *see also* Collier on Bankruptcy ¶ 550.03[5] ("the better-reasoned position is that, once the trustee has avoided a transfer and established that the property has been transferred to an immediate or mediate transferee, the transferee has the burden to show that it

took (1) for value, (2) in good faith and (3) without knowledge of the voidability of the transfer.").[5]

If the Trustee is successful in avoiding the Transfers under §§ 544 and/or 548, then the Trustee may recover the avoided Transfers from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).  However, the Trustee may not recover from "any immediate or mediate transferee of such initial transferee" if such subsequent transferee "takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided." 11 U.S.C. § 550(b)(1).  Thus, an initial transferee's liability is absolute, while a subsequent transferee may avoid liability if that transferee satisfies § 550(b)(1).  The first step in this analysis is to determine whether the Defendant is an initial or subsequent transferee.

The Defendant argues that because the Kanes controlled the Debtor, because the Transfers were in satisfaction of the Kanes' personal income tax liabilities, and because the Kanes had (at least theoretically) the power to cause the Debtor to make distributions to them as partners, the Transfers should be treated as distributions to the Kanes followed by payment to the Defendant.  The Defendant suggests that the Eleventh Circuit's "control" test, used to determine whether a debtor controlled the asset allegedly transferred by fraudulent conveyance or preferential transfer, or whether a defendant gained control over

---

[5] In cases where the defendant, an initial recipient of an avoidable transfer, argues that it "merely served as a conduit for the assets that were under the actual control of the debtor-transferor," the defendant also bears the burden of proving its status as a conduit lacking such actual control. *Martinez v. Hutton (In re Harwell)*, 628 F.3d 1312, 1323 (11th Cir. 2010).  The "mere conduit" defense is not applicable here.

such an asset transferred to it[6], "requires courts to step back and evaluate a transaction in its entirety to make sure that their conclusions are logical and equitable." *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1199 (11th Cir. 1988). The Defendant states that if the Kanes had caused the Debtor to write checks to them and then the Kanes had paid their own taxes, the Defendant would not be subject to suit (at least not in the Debtor's case). The Defendant argues that the Kanes' collapsing what could have been two transactions into one does not change the ultimate conclusion that the Kanes were the initial transferees. The majority of case law does not support this conclusion.

Several appeals courts have rejected the very argument presented by the Defendant here. "[A]ll of the circuit courts addressing the issue have concluded that a principal who directs a debtor corporation to issue a check to pay for a personal debt is not an initial transferee." *Richardson v. Preston (In re Antex, Inc.)*, 397 B.R. 168, 173 (B.A.P. 1st Cir. 2008); *see also United States v. Moyer (In re Regency Int'l Flooring, LLC)*, No. 09-CV-1146, 2010 U.S. Dist. LEXIS 109396 (W.D. Mich. Oct. 14, 2010) (declining to look behind the form of the transaction to find what could be considered, in substance, a two-step transaction because to rule that the IRS was not an initial transferee would require the court to ignore the plain language of the Bankruptcy Code and the weight of well-settled authority). The Eleventh Circuit has specifically held that the extent of a principal's control over a debtor generally, and over the debtor's actions in transferring the disputed funds to the defendant in particular, is "entirely irrelevant to the 'initial transferee' issue." *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 598 (11th Cir. 1990).

Similarly, the fact that the Transfers were recorded as distributions to the Kanes in the Debtor's accounting records does not establish that the Kanes obtained dominion and

---

[6] The Eleventh Circuit later suggested that this second test, addressing whether a recipient of an avoidable transfer is a mere conduit for the debtor, is better labeled the "conduit test." *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 598 (11th Cir. 1990).

control over the funds subject to the Transfers. *Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.)*, 127 F.3d 1195, 1200 (9th Cir. 1997); *Richardson v. Preston (In re Antex, Inc.)*, 397 B.R. 168, 173 (B.A.P. 1st Cir. 2008); *Richardson v. FDIC (In re Blackburn Mitchell, Inc.)*, 164 B.R. 117, 126 (Bankr. N.D. Cal. 1994).

The Defendant urges this Court to follow *Liebersohn v. IRS (In re C.F. Foods, L.P.)*, 265 B.R. 71, 81 (Bankr. E.D. Pa. 2001) and find that the Kanes, in directing payment of the Debtor's funds for their individual benefit, were the initial transferees of the funds used in the Transfers. As discussed above, the holding in *C.F. Foods* is the minority view. It is not supported by controlling Eleventh Circuit precedent. *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588, 598 (11th Cir. 1990).

For the foregoing reasons, the Court determines that the Defendant was the "initial transferee" of each Transfer within the meaning of § 548(a)(1).[7]


**DEFENDANT'S OBJECTION TO ENTRY OF FINAL ORDERS BY THIS COURT**

In its *Objection by United States of America to Bankruptcy Court's Entry of Final Judgment in this Adversary Proceeding* [ECF No. 265] (the "Objection") and in its *United States of America's Opposition to Plaintiff/Trustee's Motion for Partial Summary Judgment and*

---

[7] Even if the Court determined the Defendant was a subsequent transferee of the Transfers, the Defendant must still prove that it took for value, in good faith, and without knowledge of the voidability of the Transfers. It seems obvious that the Defendant took for value, accepting the Transfers in satisfaction of the tax obligations of the Kanes. It is unclear whether the Defendant received the Transfers in good faith and without knowledge of their voidability. The Defendant received checks directly from the Debtor, not from the taxpayers themselves. It makes no difference that the Defendant, through the Internal Revenue Service, receives many such tax payments on behalf of parties other than the taxpayers. There is no reason the Defendant should be treated differently from any other party in this regard. The Defendant states that it had no immediate way of knowing whether the Transfers represented avoidable transfers from the Debtor. But this is so only because the Defendant apparently did not investigate the issue. The fact that the Defendant received payment from a party other than its obligors, the Kanes, places the Defendant on inquiry notice of a potential concern. From the evidence before the Court at this stage of the litigation, it is not possible to determine whether the Defendant took the Transfers in good faith and without knowledge of their potential voidability. Thus, even if the Court had ruled that the Defendant was a subsequent rather than an initial transferee, the Defendant nevertheless would not have been entitled to summary judgment on its defense under § 550(b).

*Motion to Exclude Various Expert Testimony* [ECF No. 264], the Defendant objects to this Court entering final judgment in the above-captioned adversary proceeding. The Defendant argues that entry of final judgment by this Court would violate Article III of the United States Constitution, citing *Stern v. Marshall*, 131 S. Ct. 2594 (2011).

Numerous courts have considered whether the Supreme Court's analysis in *Stern* should be applied in the context of fraudulent transfer actions pursued in bankruptcy cases. This Court believes that it has the power to enter final judgment in any action brought by a trustee, debtor-in-possession or other authorized party in interest under §§ 548 and 544. *See, e.g., Feuerbacher v.* Moser, No. 11-CV-272, 2012 U.S. Dist. LEXIS 44396 (E.D. Tex. Mar. 29, 2012); *Kelley v. JPMorgan Chase & Co*, 464 B.R. 854 (D. Minn. 2011); *Cardiello v. Arbogast (In re Arbogast)*, 466 B.R. 287 (Bankr. W.D. Pa. 2012); *Zazzali v. 1031 Exchange Group (In re DBSI, Inc.),* 467 B.R. 767 (Bankr. D. Del. 2012); *Burch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626 (Bankr. D. Del. 2012); *Gugino v. Canyon Cnty. (In re Bujak)*, No. 11-6038, 2011 WL 5326038 (Bankr. D. Idaho Nov. 3, 2011); *Menotte v. United States (In re Custom Contractors, LLC)*, 462 B.R. 901 (Bankr. S.D. Fla. 2011); *In re Safety Harbor Resort and Spa*, 456 B.R. 703 (Bankr. M.D. Fla. 2011). However, the Court need not determine here and now whether it has such power.

In this order, the Court grants partial summary judgment in favor of the Trustee, ruling that the Defendant was an "initial transferee" within the meaning of § 550(a)(1) with regard to each of the Transfers, and denies all other requests for summary judgment. Because this order is not dispositive with regard to all of the claims addressed in this adversary proceeding, and the Court will not enter partial judgment as a result of this ruling, this order "does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7054(a). This order is not a final order. *See Smith v. First Nat'l Bank of Albany (In re Smith)*, 735 F.2d 459 (11th Cir. 1984); *In re Corrugated Container Antitrust Litigation,* 694 F.2d 1041 (5th Cir. 1983); *Eudy v. Motor-Guide, Herschede Hall Clock Co*., 604 F.2d 17 (5th Cir. 1979). Thus, even if the causes of action presented here would not be subject to entry of final judgment in this Court, the present order is not a "final judgment" subject to the Article III concerns addressed by the Supreme Court in *Stern*. *Stern*, 131 S. Ct. at 2615, 2620 (specifically limiting the Supreme Court's analysis to "final judgments"). In addition, as noted below, the District Court has withdrawn the reference for purposes of trial. Unless that order is vacated, it is the District Court that will enter final judgment in this adversary proceeding. Given the Court's ruling here and the present posture of this case, the concerns raised in *Stern* are not implicated and the Defendant's Objection will be overruled.

Neither the Plaintiff nor the Defendant requested a jury trial in this action. However, the intervenors Charles and Harley Kane requested a jury trial and moved the District Court for an order withdrawing the reference of the present adversary proceeding to this Court. As a result of the Kanes' motion, the District Court withdrew the reference of this adversary proceeding solely for purposes of trial. [ECF No. 125.] This Court recently entered an order dismissing the Kanes from this adversary proceeding. [ECF No. 295.] If the District Court determines, on motion of a party or otherwise, to vacate its order withdrawing the reference of this adversary proceeding for purposes of trial then this Court will consider anew the Defendant's Objection without the need for the Defendant to lodge a separate objection to this Court entering final judgment in this adversary proceeding.

Accordingly, it is ORDERED AND ADJUDGED that:

1.      The *United States of America's Motion for Summary Judgment and Memorandum of Law in Support* [ECF No. 227] is DENIED.

2.      The *Plaintiff/Trustee's Motion for Partial Summary Judgment, Motion to Exclude Various Expert Testimony, and Incorporated Memorandum of Law in Support Thereof* [ECF No. 228] is GRANTED IN PART, to the extent that the Court finds the Defendant was an "initial transferee" of each of the Transfers within the meaning of 11 U.S.C. § 550(a), and is otherwise DENIED.

3.      The Defendant's objections to this Court entering final judgment in the above-captioned adversary proceeding, lodged in the *Objection by United States of America to Bankruptcy Court's Entry of Final Judgment in this Adversary Proceeding* [ECF No. 265] and in the *United States of America's Opposition to Plaintiff/Trustee's Motion for Partial Summary Judgment and Motion to Exclude Various Expert Testimony* [ECF No. 264], are OVERRULED, provided, however, that should the District Court vacate its order withdrawing the reference of this adversary proceeding for trial this Court will consider anew the Defendant's objection contained in ECF No. 265 without the need for the Defendant to file a separate document.

###

Copies Furnished To:

G. Steven Fender, Esq.

*G. Steven Fender, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and to file a certificate of service with the court.*